Matter of Incorporated Vil. of Freeport v Public Serv. Commn. of the State of N.Y. (2022 NY Slip Op 03785)

Matter of Incorporated Vil. of Freeport v Public Serv. Commn. of the State of N.Y.

2022 NY Slip Op 03785

Decided on June 9, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 9, 2022

533445
[*1]In the Matter of Incorporated Village of Freeport, Appellant,
v
Public Service Commission of the State of New York, Respondent.

Calendar Date:April 19, 2022

Before:Lynch, J.P., Clark, Aarons, Colangelo and McShan, JJ.

Law Offices of Steven Cohn PC, Carle Place (Matthew T. Feinman of counsel), for appellant.
Robert Rosenthal, Public Service Commission, Albany (John C. Graham of counsel), for respondent.

Colangelo, J.
Appeal from a judgment of the Supreme Court (Bartlett III, J.), entered May 26, 2021 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, among other things, review a determination of respondent reducing the amount of petitioner's tax equivalency payment.
Petitioner owns and operates an electric utility, known as Freeport Electric, pursuant to General Municipal Law article 14-a, that serves approximately 14,700 residential and commercial customers. Pursuant to Freeport Electric's arrangement with petitioner, Freeport Electric makes an annual payment to petitioner, known as a tax equivalency payment, that serves to compensate petitioner for the taxes it would have received if a similarly situated privately-owned utility were operating in its place. Under Public Service Law article 4, respondent has "general supervision" over all gas and electric companies operating within the state (Public Service Law § 66 [1]), and is responsible for reviewing requests made by utilities for rate increases and setting rates that it deems just and reasonable for those utilities (Public Service Law §§ 2 [13]; 5 [1] [b]; 65 [1]; 66 [5], [12]). In August 2019, petitioner filed a rate application to increase the rates charged by Freeport Electric and to collect a tax equivalency payment of approximately $3.66 million.
Two prior rate applications were filed by petitioner, in 2007 and in 2014, seeking to collect a tax equivalency payment of $3.757 million. In 2007, respondent approved a settlement proposal incorporating the requested tax equivalency payment in petitioner's electric rates. In doing so, respondent did not employ any tax equivalency payment calculation and instead accepted petitioner's proposed tax equivalency payment, recognizing that petitioner had set its budget based on $3.757 million, and it would be difficult for petitioner to recalculate taxes in the middle of a budget year. However, the settlement proposal expressly warned that petitioner's 2007 proposed tax equivalency payment amount "shall not be used as precedent and shall not be binding on [respondent] in any future rate or other proceedings." In 2014, respondent again accepted petitioner's proposed $3.757 million tax equivalency payment because of the devastating impact to petitioner by Hurricane Sandy, but again warned that in the next rate proceeding, absent compelling circumstances, petitioner's tax equivalency payment would be based on respondent's own calculation. In response to petitioner's 2019 rate application to collect a tax equivalency payment of approximately $3.66 million, respondent, using the net book value method, calculated an allowable tax equivalency payment of $1.433 million. However, due to petitioner's adverse economic circumstances as a result of the COVID-19 pandemic, respondent, in its discretion, added $1.305 million to the calculated allowance, raising the tax equivalency payment to $2.738 million and [*2]issued a 2020 rate order to that effect. Petitioner then timely petitioned for rehearing of the rate order, which respondent denied.
Petitioner commenced the instant CPLR article 78 proceeding to challenge respondent's determination as arbitrary and capricious. Supreme Court dismissed the petition, prompting this appeal.
Petitioner contends that respondent arbitrarily used three different tax equivalency payment calculation methods in its 2007, 2014 and 2020 rate orders, respectively. However, the record reveals that respondent employed its own methodology in only the 2020 rate order and accepted petitioner's proposed tax equivalency payment allowance in the 2007 and 2014 rate orders.
The Court of Appeals has recognized that "[s]etting utility rates presents 'problems of a highly technical nature, the solutions to which in general have been left by the Legislature to the expertise of [respondent]'" (Matter of Abrams v Public Serv. Commn. of State of N.Y., 67 NY2d 205, 211-212 [1986], quoting Matter of New York State Council of Retail Merchants v Public Serv. Commn. of State of N.Y., 45 NY2d 661, 672 [1978]; accord Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of the State of N.Y., 169 AD3d 1334, 1335 [2019], appeal dismissed and lv denied 33 NY3d 1053 [2019]). Respondent's "determinations in setting just and reasonable rates are entitled to deference and may not be set aside unless they are without rational basis or without reasonable support in the record" (Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of the State of N.Y., 169 AD3d at 1335 [internal quotation marks and citations omitted]). In review of a quasi-legislative rate determination where no hearing is required by law, the inquiry is "whether [the] determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]). Rationality, not motive, is reviewed in this inquiry (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Moreover, "[respondent's] authority to establish public utility rates has been recognized as the very broadest of powers . . . [and] included in [such] broad rate-making powers is the authority to fashion reasonable solutions to the problems in prospective rate setting caused by the pressures and demands of a fluctuating economy. The question, then, is not whether [respondent] has the authority to fashion such solutions, but whether there is a rational basis for [respondent]'s finding that the use of a particular solution will result in rates that are just and reasonable" (Matter of Kessel v Public Serv. Commn. of State of N.Y., 136 AD2d 86, 92 [1988] [internal quotation marks and citation omitted], lv denied 72 NY2d 805 [1988]).
The record establishes that respondent chose the net book value method as the best method suited to [*3]produce the most accurate tax equivalency payment with the information made available to it. The net book value methodology was likely to be more accurate than a commonly-known methodology used by the State Office of Real Property Tax Services because, among other things, the utility does not pay property taxes and petitioner failed to provide Freeport Electric's historic asset cost. Moreover, to employ the methodology used by the State Office of Real Property Tax Services required knowledge of the original cost of the property, which petitioner failed to provide. As respondent pointed out, the net book value is the method typically used in utility rate proceedings to determine asset value and, while petitioner did not provide support for its requested tax equivalency payment of $3.66 million, petitioner did provide the net book value. Accordingly, we find that respondent provided a rational basis for its valuation of petitioner's utility assets (see Matter of Abrams v Public Serv. Commn. of State of N.Y., 67 NY2d at 212, 218).
Finally, we reject petitioner's contention that respondent reduced petitioner's tax equivalency payment based upon the bias of one of respondent's five members. This member recused himself or herself from this proceeding, thereby eliminating any alleged bias from the process.
Lynch, J.P., Clark, Aarons and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.